USDC SDNY
DOCUMENT
ELECTRONICALLY FILED
DOC #: ___
DATE FILED: 3/31/14

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

---------------------------------------------------------------X

RANDOLPH ROSSI,

Plaintiff,

-against-

BRIAN FISCHER, et al.,

Defendants.

---------------------------------------------------------------X

13 Civ. 3167 (PKC) (DF)

**REPORT AND RECOMMENDATION**

**TO THE HONORABLE P. KEVIN CASTEL, U.S.D.J.:**

*Pro se* plaintiff Randolph Rossi ("Plaintiff"), a New York State inmate and adherent of the Rastafari faith, filed an Amended Complaint on November 8, 2013,[1] alleging violations of his constitutional rights, pursuant to 42 U.S.C. § 1983, by the Commissioner and other officials of the New York State Department of Corrections and Community Supervision ("DOCCS") (collectively, "Defendants"), for allegedly denying him the right to practice his religion while incarcerated. (*See* Dkt. 11.) On March 4, 2014, Plaintiff filed a motion for a preliminary injunction, seeking a number of types of relief (Dkt. 17), and that motion was referred to me by the Honorable P. Kevin Castel, U.S.D.J. for a report and recommendation (*see* Dkt. 18).

---

[1] Although the docket of this case reflects a filing date of November 19, 2013, a *pro se* prisoner's papers are deemed filed when they are handed over to prison officials for forwarding to the Court. *See Houston v. Lack*, 487 U.S. 266, 270 (1988). Thus, in the absence of evidence to the contrary, the Court will deem the Amended Complaint to have been filed on November 8, 2013, the date Plaintiff signed it. *See, e.g., Rhodes v. Senkowski*, 82 F. Supp. 2d 160, 165 (S.D.N.Y. 2000). The Court further notes that, while the caption of the Amended Complaint identifies the first-named defendant as Commissioner "Fishcer," the same defendant is identified in the body of Plaintiff's pleading as Commissioner "Fischer." (*See* Amended Complaint, dated Nov. 8, 2014 (Dkt. 11), at ¶ 4.) As the name on the caption is apparently misspelled, the Court has corrected the error herein.

After holding a conference with the parties, this Court, with the parties' consent, bifurcated Plaintiff's motion so as to address, in the first instance, the narrow question of whether Defendants should be required to permit Plaintiff to celebrate April 21 as a holy day, in accordance with his religious beliefs. After the Court received follow-up submissions and took testimony from Plaintiff on this point, Defendants proceeded to inform the Court that they would voluntarily afford Plaintiff two of the types of relief he seeks with respect to his observance of that holy day: to be excused from work or other programming on that day, and to have a special meal. Accordingly, the only remaining issue for the Court, at this time, is whether Defendants should be required to formalize April 21 as a holiday within the prison facility where Plaintiff is housed (which may, for practical purposes, require DOCCS to place the date on a centralized prison calendar), so that Plaintiff may have a communal celebration with other Rastafarian inmates.

For the reasons that follow, I find that Plaintiff has not met the stringent standard for entitlement to a mandatory preliminary injunction on this single issue of communal celebration, and thus I recommend that the Court deny the requested preliminary injunctive relief to that extent. As to the remainder of Plaintiff's requests, this Court has set an expedited discovery schedule, and will issue a supplemental report and recommendation as soon as a sufficient evidentiary record can be established.

## BACKGROUND

In his motion, as filed, Plaintiff sought a preliminary injunction (1) mandating that Defendants allow him (a) to observe Rastafarian holy days on April 21, May 25, August 17, and October 7; (b) to wear a religious turban; and (c) to hold the Rastafarian community worship on Fridays instead of Wednesdays; and (2) prohibiting Defendants from (a) depositing 50% of the

money raised by the Rastafarian community into the Inmate Occupational Therapy Fund; (b) mandating Plaintiff's (and the Rastafarian community's) diet on religious holy days; and (c) generally dictating Plaintiff's (and the Rastafarian community's) religious practices. (*See* Dkt. 17, at 1-2.)

This Court held a conference with Plaintiff and counsel for Defendants on March 19, 2014. As noted above, the parties agreed, at that conference, to bifurcate Plaintiff's motion, so as to enable the parties and the Court to focus first on Plaintiff's desire to celebrate a claimed holy day that would be arriving quickly. The Court directed the parties to submit legal argument and evidentiary support, by March 24, 2014, on the single issue of the April 21 holy day. In particular, the Court asked Plaintiff to provide details about what his religion requires for an April 21 observance, and information regarding any previous requests he had made with respect to observing this holy day while incarcerated in the state prison system. The Court asked Defendants to provide the Court with information regarding any institutional concerns associated with recognizing the April 21 holy day, any relevant DOCCS policies, the history and current status of placing April 21 on the DOCCS religious calendar as a Rastafari holy day, the number of Rastafarian sects within DOCCS and their differences in religious practices (if relevant to any penological burden that might be posed by placing a particular holy day on the calendar), and relevant grievances filed by Plaintiff.

In response to the Court's request, Plaintiff submitted a declaration under penalty of perjury (styled as an "Affidavit") (*see* Supplemental Affidavit in Support of the Motion for Preliminary Injunction, dated Mar. 19, 2014 ("Pl. Suppl. Aff.") (Dkt. 20)), to supplement the affidavit Plaintiff had originally submitted (*see* Affidavit in Support of the Motion for Preliminary Injunction, sworn to Mar. 4, 2014 ("Pl. Aff.") (Dkt. 17)). Defendants, however,

submitted only a letter from counsel, without any accompanying affidavit or declaration, although they attached to their attorney letter a copy of a DOCCS directive with respect to religious programs and practices and a printout that appeared to list grievances filed by Plaintiff. (*See* Letter to the Court from Anna M. Hehenberger, dated Mar. 24, 2014 ("Def. Ltr.") (Dkt. 19); Directive 4202, dated Jan. 18, 2008 ("Directive 4202") (Dkt. 19, at 4); List of Inmate Grievances (Dkt. 19, at 17).)

The Court held a follow-up conference with the parties on March 27, 2014, at which time the Court placed Plaintiff under oath and questioned him about his religious beliefs. (*See* Transcript of Proceedings, dated Mar. 27, 2014 ("Tr.") (Dkt. 25).) The Court also permitted Defendants' counsel to pose certain questions to Plaintiff. (*See id.*) Plaintiff testified, *inter alia*, that April 21 is a day of celebration in which people of the Rastafari faith come together to reason, chant, and give thanks and praise for the day. (*Id.* at 10.) Work is not permitted on that day, and Rastafarians eat a traditional meal, which would not include meat or eggs, and which would be prepared at the celebration. (*Id.* at 10-12.) While Plaintiff eats fish on ordinary days, he does not eat fish (or other meat) on holy days, and he does not eat eggs. (*Id.* at 27-28.) Plaintiff testified that some Rastafarians may observe the requirements of the faith differently. (*Id.* at 11.) Plaintiff's beliefs require him to eat, on April 21, only vegetarian food that has not been contaminated with meat (by, for example, being prepared in dishes that were used to prepare meat). (*Id.* at 11-12.) Kosher vegetarian food, not including eggs, would satisfy his religious dietary requirements for April 21. (*Id.* at 12.)

By letter dated March 28, 2014, Defendants' counsel advised the Court that DOCCS will voluntarily exempt Plaintiff from work and provide him with a vegetarian "Kosher CAD (no-

egg) meal"[2] on April 21. (*See* Dkts. 22, 24.) Defendants also submitted a purported "declaration" by Cheryl Morris ("Morris"), the Director of Ministerial, Family and Volunteer Services for DOCCS, as to the reasons why April 21 has not been included on the DOCCS religious calendar. (*See* Declaration of Cheryl V. Morris, undated ("Morris Decl.") (Dkt. 23).)[3]

## DISCUSSION

### I. APPLICABLE LEGAL STANDARDS

#### A. Preliminary Injunction

In general, in this circuit, a party seeking a preliminary injunction must show: "(a) irreparable harm and (b) either (1) likelihood of success on the merits or (2) sufficiently serious questions going to the merits to make them a fair ground for litigation and a balance of hardships tipping decidedly toward the party requesting the preliminary relief." *Citigroup Global Markets, Inc. v. VCG Special Opportunities Master Fund Ltd.*, 598 F.3d 30, 35-38 (2d Cir. 2010) (internal citations omitted). Where, however, the moving party seeks to stay "government action taken in the public interest pursuant to a statutory or regulatory scheme, the district court should not apply the less rigorous ["serious questions"] standard and should not grant the injunction unless the moving party establishes, along with irreparable injury, a likelihood that he will succeed on the merits of his claim." *Id.* at 35 n.4 (internal citations omitted). Moreover, where the moving party seeks a mandatory preliminary injunction that "alter[s] the status quo by commanding some positive act," the injunction should issue "only

---

[2] The Court understands "CAD" to mean "Cold Alternative Diet." (*See* Directive 4202, at 8.)

[3] The Court notes that, pursuant to 28 U.S.C. § 1746, an unsworn declaration may constitute admissible evidence, but only when it is expressly subscribed as true *under penalty of perjury*, which Morris's declaration was not. (*See* Morris Decl.) Accordingly, this Court affords Morris's declaration no evidentiary value at this time.

upon a clear showing that the moving party is entitled to the relief requested, or where extreme or very serious damage will result from a denial of preliminary relief." *Id.* (internal quotation marks and citations omitted).

Violations of First Amendment rights are generally recognized as constituting an irreparable injury. *Campos v. Coughlin*, 854 F. Supp. 194, 204 (S.D.N.Y. 1994) (citing *Elrod v. Burns*, 427 U.S. 347, 373 (1976); *Paulsen v. County of Nassau*, 925 F.2d 65, 68 (2d Cir. 1991)).

### B. First Amendment

It is well-established that prisoners "retain some measure of the constitutional protection afforded by the First Amendment's Free Exercise Clause," *Ford v. McGinnis*, 352 F.3d 582, 588 (2d Cir. 2003) (citing *Pell v. Procunier*, 417 U.S. 817, 822 (1974)), though, due to deference to the complex administrative decisions made in the prison context, their free exercise claims are "judged under a 'reasonableness' test less restrictive than that ordinarily applied to alleged infringements of fundamental constitutional rights," *Farid v. Smith*, 850 F.2d 917, 925 (2d Cir. 1988) (quoting *O'Lone v. Estate of Shabazz*, 482 U.S. 342, 349 (1987)).

Under this "reasonableness" test, official action impinging on inmates' constitutional rights is valid "if it is reasonably related to legitimate penological interests."[4] *Turner v. Safley*, 482 U.S. 78, 89-91 (1987); *Salahuddin v. Goord*, 467 F.3d 263, 274 (2d Cir. 2006). Guiding the application of this test are four factors: (1) the existence of a "valid, rational connection" between the action and the legitimate governmental interest put forward to justify it; (2) whether or not inmates have alternative means for exercising their rights; (3) the "ripple effect" that accommodation of the asserted rights would have on guards, other inmates, and the allocation of

---

[4] The same analysis applies whether the challenged action is a prison regulation or an individual decision. *See Ford*, 352 F.3d at 595 n.15.

prison resources; and (4) the absence of alternative accommodations. *See Turner*, 482 U.S. at 90-91; *Salahuddin*, 467 F.3d at 274.

To succeed on a Free Exercise claim, a plaintiff must show that "the disputed conduct substantially burdens his sincerely held religious beliefs." *Salahuddin*, 467 F.3d at 274-75.[5] It is not necessary, in making this threshold showing, for prisoners to show that "they either have been prevented from doing something their religion says they must, or compelled to do something their religion forbids"; rather, they need only show that the disputed conduct was "central or important" to their practice of their religion. *Ford*, 352 F.3d at 593-94.

With particular respect to diet, prisoners have a right "to receive diets consistent with their religious scruples," *Kahane v. Carlson*, 527 F.2d 492, 495 (2d Cir. 1975), though such right may be limited where accommodation is prohibitively expensive or administratively unfeasible, *see Benjamin v. Coughlin*, 905 F.2d 571, 579 (2d Cir. 1990).

## II. <u>PLAINTIFF'S CLAIM</u>

As Plaintiff seeks a mandatory preliminary injunction requiring DOCCS to alter the status quo, he must meet the more rigorous standard, which demands "a clear showing that the moving party is entitled to the relief requested, or where extreme or very serious damage will result from a denial of preliminary relief." *Citigroup Global Markets, Inc.*, 598 F.3d at 35 n.4 (internal citations omitted).

---

[5] Although the Second Circuit has declined to decide whether *prisoners* must still make this threshold "substantial burden" showing, given that, as noted above, their Free Exercise claims are now otherwise judged under a different test from those of other plaintiffs, the circuit court has assumed that they must, where the parties have not argued otherwise. *See Ford*, 352 F.3d at 591-92 (assuming that the substantial burden test applies, where the plaintiff did not argue otherwise and the parties did not brief the issue); *see also Salahuddin*, 467 F.3d at 275 n.5 (declining to decide the parties' dispute about whether the substantial burden test applies, where resolution of the summary judgment motion did not require it).

Plaintiff describes himself as a "practicing Rastafarian" (Pl. Aff. ¶ 5), for whom April 21 is an important holy day, as it commemorates the day in 1966 when Emperor Haile Selassie I of Ethiopia, believed to be the living personification of God, visited Jamaica (Pl. Suppl. Aff. ¶¶ 11-12). Plaintiff believes that he should celebrate April 21 by coming together with other Rastafarians, and that he must refrain from working or eating certain foods, specifically eggs and meat. (*See* Tr., at 10-12.)

According to Plaintiff, he has requested that April 21 be placed on the DOCCS religious calendar on at least five occasions, in 2005,[6] 2007, 2010, and 2011 (*see* Pl. Suppl. Aff. ¶¶ 4-7), apparently renewing his efforts each time he was transferred to a different facility within the state prison system. During the same time period, he filed four inmate grievances related to DOCCS's refusal to recognize April 21 as a holy day; the grievances were denied, and he appealed at least some of the denials to the Central Office Review Committee, which affirmed. (*See id.*)

This Court finds credible Plaintiff's testimony about his sincere religious beliefs. Nonetheless, as Defendants have indicated that they will voluntarily exempt Plaintiff from work on April 21 and provide him with the type of meal that he indicated would be consistent with his religious requirements, the Court need not determine whether Plaintiff would be entitled to an injunction requiring the same result.

The record with respect to the third aspect of Plaintiff's requests for April 21 – permission to congregate with other Rastafarians – is less clear. While Plaintiff indicated that coming together to give thanks and praise was a significant aspect of the celebration, and that the

---

[6] Plaintiff also refers to a "subsequent request" to his 2005 request. (Pl. Suppl. Aff. ¶ 4.) It is unclear whether this subsequent request was made later in 2005, in 2006, or in 2007, prior to Plaintiff's transfer to a different facility. The exact timing is immaterial to the current inquiry.

celebratory meal would traditionally be prepared at that time (Tr., at 10-11; 31), he also noted that "it is not an official congregate service" (*id.* at 10).

This Court is mindful that, in showing that the disputed conduct substantially burdened his religious beliefs, Plaintiff will need only show that it was "central or important" to his faith, as opposed to required absolutely. *Ford*, 352 F.3d at 593-94. On a full record, Plaintiff may well be able to show this, even if the day need not be observed with an "official" service. Nonetheless, on his motion for mandatory preliminary injunctive relief, Plaintiff must make "a clear showing that [he] is entitled to the relief requested," or that "extreme or very serious damage will result." *Citigroup Global Markets, Inc.*, 598 F.3d at 35 n.4 (internal citations omitted). Given this stringent standard, this Court finds that, on the narrow issue of whether Plaintiff should be permitted to congregate with other Rastafarians on April 21, his somewhat ambiguous testimony is insufficient to meet this standard.

Furthermore, it is unclear whether any of the defendants who have thus far been served would have the authority, within DOCCS, to approve and facilitate a group celebration, on either a facility-wide or a state-wide level. According to defense counsel, the DOCCS Commissioner has not yet been served with process,[7] although Plaintiff has effected service on the Deputy Commissioner, Jeff McCoy. (*See* Tr., at 32-34.) Defendants' counsel stated that it is likely that only the *Commissioner* would have the authority to "sign[] off" on a change to the holiday calendar. (*See id.* at 35.) Plaintiff, on the other hand, testified to his belief that it is the Deputy

---

[7] In his Amended Complaint, Plaintiff named as a defendant "Brian Fischer, Commissioner and[/]or his Successor." (*See* Dkt. 11.) It is the Court's understanding that Commissioner Fischer has retired, that the current Acting Commissioner is Anthony Annucci, and that neither former Commissioner Fischer nor Acting Commissioner Annucci has yet been served with process. (*See* Tr., at 32-33.)

Commissioner who has, at least, "interim authority" to approve policy changes. (*See id.* at 37.) In this regard, the Court notes that, on the one relevant DOCCS "Directive" produced thus far by Defendants, the "Approving Authority" who signed the document does appear to be a former Deputy Commissioner (*id.*; *see also* Directive 4202 (apparently signed by former Deputy Commissioner Kenneth Perlman)), but there has been no testimony in the record, to date, to verify that signature or to confirm Plaintiff's understanding that Deputy Commissioner McCoy would be able to afford the relief sought. Although Plaintiff has also named and served the Superintendent of the facility where he is now housed, it is also unclear, on the current record, whether decisions about the communal observance of religious holidays can be made at the facility level.

As Plaintiff has not carried his threshold burden to demonstrate either that he is clearly entitled to a group celebration (which can be afforded to him by one of the served defendants) or that he will suffer extreme or very serious harm should he continue to be denied the opportunity to celebrate the April 21 holy day with others, this Court need not consider whether DOCCS's conduct is "reasonably related to legitimate penological interests." *Turner*, 482 U.S. at 89-91.

## CONCLUSION

For the foregoing reasons, I recommend:

1. that the Court treat Plaintiff's motion for a preliminary injunction as bifurcated, and consider, at this time, only Plaintiff's application for permission to celebrate the Rastafari holy day of April 21;

2. that the Court deny this aspect of Plaintiff's motion as moot, to the extent he has sought (a) to be excused from work or programming, and (b) to have a special meal on that day; and

3. that the Court deny this aspect of Plaintiff's motion, to the extent he has sought to have Defendants facilitate a

> communal celebration, by himself and others of the Rastafari faith, on April 21 (either by having that date added to the DOCCS holiday calendar, or by other means).

Pursuant to 28 U.S.C. § 636(b)(1) and Rule 72(b) of the Federal Rules of Civil Procedure, the parties shall have fourteen (14) days from service of this Report to file written objections. *See also* Fed. R. Civ. P. 6 (allowing three additional days for service by mail). **Although the Court will mail a copy of this Report and Recommendation to Plaintiff, the Court also directs Defendants' counsel to fax a copy to the facility where Plaintiff is currently incarcerated, with the direction that it be provided to Plaintiff immediately, given the short time frame between the close of the objection period and April 21.**

Any objections to this Report and Recommendation, and any responses to objections, shall be filed with the Clerk of Court, with courtesy copies delivered to the chambers of the Honorable P. Kevin Castel, United States Courthouse, 500 Pearl Street, Room 1020, New York, New York 10007, and to the chambers of the undersigned, United States Courthouse, 500 Pearl Street, Room 1660, New York, New York, 10007. Any requests for an extension of time for filing objections must be directed to Judge Castel. As Plaintiff is proceeding in this action *pro se*, any submissions he makes to the Court (including any objections to this Report and Recommendation for filing, any courtesy copies for judges' chambers, and any requests for extensions of time) should be mailed by him to the Court's *Pro Se* Office.

FAILURE TO FILE OBJECTIONS WITHIN FOURTEEN (14) DAYS WILL RESULT IN A WAIVER OF OBJECTIONS AND WILL PRECLUDE APPELLATE REVIEW. *See Thomas v. Arn*, 474 U.S. 140, 155 (1985); *IUE AFL-CIO Pension Fund v. Herrmann*, 9 F.3d 1049, 1054 (2d Cir. 1993); *Frank v. Johnson*, 968 F.2d 298, 300 (2d Cir. 1992); *Wesolek v.*

*Canadair Ltd.*, 838 F.2d 55, 58 (2d Cir. 1988); *McCarthy v. Manson*, 714 F.2d 234, 237-38 (2d Cir. 1983).

Dated: New York, New York
March 31, 2014

Respectfully submitted,

DEBRA FREEMAN
United States Magistrate Judge

Copies to:

The Honorable P. Kevin Castel, U.S.D.J.

Mr. Randolph Rossi
91A3680
Woodbourne Correctional Facility
99 Prison Road
P.O. Box 1000
Woodbourne, NY 12788-1000

Counsel for Defendants (via ECF)