UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
-----------------------------------------------------------x
RANDOLPH ROSSI,

                          Plaintiff,                    13-cv-3167 (PKC)(DF)

          -against-                                     MEMORANDUM
                                                        AND ORDER

BRIAN FISHCER, et al.,

                          Defendants.
-----------------------------------------------------------x

CASTEL, U.S.D.J.

          Plaintiff Randolph Rossi, proceeding pro se, brings this action against officials of

the New York State Department of Corrections and Community Supervision ("DOCCS").  In his

Amended Complaint, plaintiff alleges that defendants violated, and continue to violate, his

constitutional rights by denying him the right to freely practice his Rastafarian faith while

incarcerated.  He brings an action asserting violations of the First and Fourteenth Amendments

and affirmatively disaffirms any claim under the Religious Land Use and Institutionalized

Persons Act ("RLUIPA").  Defendants move to dismiss the Amended Complaint for failure to

exhaust claims under the Prisoner Litigation Reform Act ("PLRA"), failure to state a claim under

the Free Exercise Clause, failure to meet the standards for injunctive relief, lack of personal

involvement of certain defendants, and qualified immunity.

          For the reasons stated below, the motion to dismiss is granted in part and denied

in part.  Plaintiff exhausted his administrative remedies as to certain claims and exhaustion is

excused as to others.  Certain allegations state a claim for relief, but plaintiff fails to plausibly

allege a violation under the Free Exercise Clause, Establishment Clause, or Equal Protection

Clause with regard to other claims.  Defendants' motion to dismiss for lack of personal

involvement fails.  Finally, defendants have not demonstrated entitlement to qualified immunity at the pleading stage.

BACKGROUND

Plaintiff Rossi is a practicing Nyahbinghi Rastafarian currently incarcerated at the Woodbourne Correctional Facility, maintained by DOCCS.  (See Amended Complaint ("Am. Compl."), ¶ 3.)  He brings this action against the following employees of DOCCS: Brian Fischer,[1] Commissioner of DOCCS; Catherine Jacobsen, Acting Deputy Commissioner for Program Services; Jeff McKoy,[2] Deputy Commissioner for Program Services; Cheryl Morris, Director for Ministerial, Family, and Volunteer Services; Mark Leonard, Director of Ministerial Family and Volunteer Services; Robert Cunningham, Superintendent for the Woodbourne Correctional Facility; Moses Santiago, Coordinating Chaplain; and Dorothy Davis, Drug Counselor at Woodbourne.  (Id. ¶¶ 4-11.)  Plaintiff asserts that defendants Fischer, Jacobsen, McKoy, Morris, Leonard, and Cunningham "are responsible for all rules, policies, regulations, and directives governing the religious rights of prisoners under their care and custody."  (Id. ¶ 13.)  He claims that "[d]efendants have denied plaintiff his right to practice his faith in accordance with the traditions, customs, and tenets of Rastafari."  (Id.)

First, plaintiff claims that he has been denied his right to celebrate, in a manner consistent with his faith, the holy days of April 21, May 25, August 17, and October 7.  (Id. ¶¶ 15-18.)  Specifically, plaintiff requests that these four Rastafari holy days be added to the religious calendar with designations that permit plaintiff to (a) refrain from working or attending programs, (b) attend a congregate worship service, and (c) eat a holy day meal with the

---

[1] The defendant's last name is spelled "Fishcer" on the docket in this case.
[2] The defendant's last name is spelled "McCoy" on the docket and in the parties' briefs.

Rastafarian inmate community.[3] (Id.; Hearing before Magistrate Judge Debra Freeman, July 8-9, 2014 ("July Tr."), pp. 82-83.) Plaintiff further requests that April 21 and August 17 be designated as "family events."[4] (Am. Compl., ¶ 16; July Tr., p. 82.) During the pendency of plaintiff's motion, DOCCS added all of the holy days at issue to its "Religious Holy Day Calendar," with varying limitations regarding how each day may be observed. (Religious Holy Day Calendar, Revised July 29, 2014 ("Revised Calendar"), p. 25 (Dkt. 82-1).) The revised DOCCS calendar, which was submitted to Magistrate Judge Freeman on the preliminary injunction motion, allows members of the Rastafari faith to be exempt from work and programming, attend a worship service, and share a holy day meal on August 17 and October 7. (Id.) For April 21, DOCCS only permits a congregate worship service and for May 25, DOCCS does not authorize any of these three designations. (Id.) The revised calendar does not designate any of the four holy days at issue as "family events." (Id.)

Second, plaintiff claims that defendants have denied him the right to add food items to the holy day meal menu, giving the "Department of Nutritional Services unfettered authority to dictate the dietary laws of the Rastafarian community for holy day celebrations." (Am. Compl., ¶ 27.) He concludes that DOCCS's "Nutritional Services is in effect acting as an ecclesiastical body for the Rastafarian community," in violation of the First and Fourteenth Amendments. (Id. ¶¶ 27, A.9.)

---

[3] Plaintiff's Amended Complaint requests that the holy days at issue be added to the calendar with the designations of "Off Work Program (OWP), Meal Consideration (MC), and Special Consideration (SC)." (Am. Compl., ¶ 16.) In the hearings before Magistrate Judge Debra Freeman, plaintiff clarified that these designations would allow him to (1) refrain from working or attending programs, (b) attend a congregate worship service, and (c) eat a holy day meal with the Rastafarian inmate community. (July Tr., pp. 82-83.)

[4] While the plaintiff in his Amended Complaint only requests that August 17 be designated as a "family event," he makes clear in the hearings before Magistrate Judge Freeman that he is asking for this designation to be added to both April 21 and August 17. (July Tr., p. 82.)

Third, plaintiff alleges that Rastafarians at Woodbourne are forced to hold congregate worship services on Wednesdays instead of Fridays, the day of worship Rastafarians traditionally observe. (Id. ¶ 26.) Defendant Cunningham denied plaintiff's grievance on the basis that "there was no room available for Rastafarians to conduct congregate worship on Fridays." (Id.)

Fourth, plaintiff claims that defendants have denied him the right to wear the Rastafarian religious turban brought to him by his wife.[5] (Id. ¶¶ 20-22.) After wearing the turban his wife sent him for two months, a correction sergeant told plaintiff that he was no longer permitted to wear the headgear. (Id. ¶ 20.) The sergeant told plaintiff that according to defendant Santiago, the Coordinating Chaplain, the only religious headgear for Rastafarians was a Tsalot Kob. (Id. ¶ 21.) Plaintiff asserts that the Tsalot Kob is "restricted to members of the Ba Beta Kristiyan Church of Haile Selassie I (a Christianized House or Mansion within Rastafari)," and does not apply to the Rastafari sect that plaintiff adheres to, the Nyahbinghi "mansion." (Id. ¶¶ 3; 20-21.) At no time did defendant Santiago speak to plaintiff to determine the religious significance of his turban. (Id. ¶ 22.) Plaintiff complied with the sergeant's order to mail home his turban, and subsequently filed a grievance that was denied by defendant Cunningham. (Id. ¶¶ 21-22.)

Fifth, plaintiff challenges Directive 4760, which requires religious groups engaging in fundraising activities to apply for Special Purpose Organization ("SPO") status. (Id. ¶ 23.) He explains that SPO status subjects religious groups to the same mandates as non-

---

[5] In the October 2014 declaration of Colonel Dennis W. Bradford, the DOCCS Director of Correction Emergency Response Team Operations, DOCCS consented to alter its policy regarding religious headgear. (Bradford Declaration (Dkt. 98).) Colonel Bradford declared that plaintiff would be allowed to wear a turban that conforms to his religious beliefs as long as it complies with mandated color restrictions. (Id. ("[A]s long as plaintiff's turban is of an appropriate color DOCCS will accommodate his request to wear it within Woodbourne Correctional Facility.")) Thus, plaintiff's claim regarding the right to wear his turban may be moot. The Court will decide this question at a later stage after the parties have briefed the issue.

religious inmate organizations, including the requirement that each organization surrender half of the funds it raises to the Inmate Occupational Therapy Fund ("IOTF") for the benefit of the general inmate population.  (Id.)  Plaintiff challenges this requirement, as it applies to Rastafarians, because he claims it has "the effect of a tax on religion" and burdens the Rastafarians' ability to purchase necessary materials for congregate services, religious classes, and holy day celebrations.  (Id. ¶ 24.)

Sixth, plaintiff claims that defendants violated his First and Fourteenth Amendment rights when they denied his request to gain access to spiritual and religious advisers (Id. ¶¶ 19, A(7).)  Defendant Morris denied plaintiff's request for advisers on security grounds, and defendant McKoy upheld Morris's determination after plaintiff sent McKoy a letter seeking intervention.  (Id. ¶ 19.)  Plaintiff claims that "[o]ther religious groups are allowed to have religious and spiritual advisors without breaching security concerns."  (Id.)

Finally, plaintiff claims that defendant Davis, a drug counselor at Woodbourne, falsely reported that plaintiff admitted to using marijuana for religious rituals to justify recommending him to a drug treatment program.  (Id. ¶ 28.)  Davis asked plaintiff in an interview about the "ritual use of marijuana within the Rastafarian faith."  (Id.)  "When plaintiff responded to defendant's request, defendant Davis put in her report that plaintiff admitted using marijuana for religious rituals only," despite the fact that plaintiff claims he "denied ever using substances whatsoever," including marijuana.  (Id.)

Plaintiff seeks declaratory, injunctive, and monetary relief, including compensatory and punitive damages.  (Id. ¶¶ A-C.)

PROCEDURAL HISTORY

Plaintiff commenced this action on May 8, 2013 (Dkt. 2), and filed an Amended Complaint on November 19, 2013.  (Dkt. 11.)  Plaintiff moved for a preliminary injunction to enjoin defendants "from continuing to enforce the policies being challenged in this proceeding." (Dkt. 17.)  Magistrate Judge Debra Freeman, to whom the preliminary injunction motion was referred to hear and report, bifurcated plaintiff's motion on the basis of the temporal proximity of the relief sought.  Magistrate Judge Freeman issued a Report and Recommendation ("R & R") as to plaintiff's ability to celebrate April 21 as a holy day (Dkt. 27), and a Supplemental R & R, re-examining some of the issues regarding April 21 and addressing the remaining claims raised by plaintiff's motion.  (Dkt. 89.)  The Court adopted both the R & R (Dkt. 37) and the Supplemental R & R.  (Dkt. 103.)  Plaintiff's motion was granted, to the extent that defendants were mandatorily enjoined, pending judgment on the merits, to: (1) permit plaintiff to wear a Rastafari religious turban; (2) allow plaintiff to observe all four of the Rastafari holy days at issue in his motion by (a) refraining from working or attending programs, (b) attending a congregate worship service, and (c) sharing a holy day meal with other Rastafarian inmates; and (3) provide space for Rastafari Sabbath worship services on Friday afternoons, or, at least, pending the final resolution of the case on its merits, to provide an alternative accommodation for such services on Friday evenings.  (Order Adopting Supp. R & R.)

Defendants now move to dismiss plaintiff's Amended Complaint in its entirety. (Dkt. 56.)

LEGAL STANDARD FOR MOTION TO DISMISS PURSUANT TO RULE 12(b)(6)

To survive a motion to dismiss under Rule 12(b)(6), Fed. R. Civ. P., "a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible

on its face.' " Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009) (quoting Bell Atl. Corp. v. Twombly,

550 U.S. 544, 570 (2007)).   " 'Labels and conclusions' or 'a formulaic recitation of the elements

of a cause of action will not do,' " rather, a plaintiff must plead "factual content that allows the

court to draw the reasonable inference that the defendant is liable for the misconduct alleged."

Id. (quoting Twombly, 550 U.S. at 555).  In considering a Rule 12(b)(6) motion to dismiss, all

non-conclusory factual allegations are accepted as true, see id. at 678–79, and all reasonable

inferences are drawn in favor of the plaintiff.  See In re Elevator Antitrust Litig., 502 F.3d 47, 50

(2d Cir. 2007) (per curiam).  Moreover, plaintiff's pro se pleadings are given a liberal and

generous construction and are read "to raise the strongest arguments that they suggest."

Triestman v. Fed. Bureau of Prisons, 470 F.3d 471, 474 (2d Cir. 2006) (internal quotation marks

omitted).

DISCUSSION

I.      Exhaustion of Administrative Remedies

The exhaustion requirement of the Prison Litigation Reform Act ("PLRA")

"applies to all inmate suits about prison life, whether they involve general circumstances or

particular episodes."  Porter v. Nussle, 534 U.S. 516, 532 (2002); 42 U.S.C. § 1997e(a).

Exhaustion of administrative remedies is mandatory *before* an action is commenced.  Neal v.

Goord, 267 F.3d 116, 122 (2d Cir. 2001), overruled on other grounds, Porter, 534 U.S. at 532.

The Second Circuit indicated in Neal, that "[s]ubsequent exhaustion after suit is filed . . . is

insufficient" to satisfy the PLRA.  Id.

While the PLRA's exhaustion requirement is "mandatory," Woodford v. Ngo,

548 U.S. 81, 85 (2006), certain caveats apply.  See Hemphill v. N.Y., 380 F.3d 680, 686 (2d Cir.

2004).  A plaintiff's failure to exhaust administrative remedies may be excused if: (1)

administrative remedies were not available; (2) defendants forfeited their affirmative defense of non-exhaustion by failing to raise or preserve it or are estopped from raising non-exhaustion because their own actions inhibited the inmate from exhausting his claims; or (3) "special circumstances" have been plausibly alleged that justify the prisoner's failure to comply with the exhaustion requirements.[6]  Id.

"A court may not dismiss for failure to exhaust administrative remedies unless it determines that such remedies are available."  Abney v. McGinnis, 380 F.3d 663, 668 (2d Cir. 2004) (alterations omitted) (quoting Snider v. Melindez, 199 F.3d 108, 114 (2d Cir. 1999)). Courts must look at the applicable set of grievance procedures when determining the availability of an administrative remedy.  Id.  Plaintiff, as an inmates of a New York State correctional facility, is subject to a three-step, administrative procedure for inmate grievances called the Inmate Grievance Program ("IGP").  See 7 N.Y. Codes R. & Reg. ("N.Y.C.R.R.") § 701.5.  The first step in the IGP is to file a grievance with the Inmate Grievance Resolution Committee (the "IGRC").  Id. § 701.5(b).  After receiving a response from the IGRC, an inmate has seven calendar days in which to appeal to the superintendent.  Id. § 701.5(c).  Within seven calendar days of receiving a response from the superintendent, the inmate then must appeal to the Central Office Review Committee ("CORC").  Id. § 701.5(d).  The CORC is required to render a decision on each appeal and transmit its decision within 30 calendar days from the time the appeal was received.  Id.

---

[6] The Second Circuit had concluded that "special circumstances" may exist where the plaintiff reasonably misinterprets the prison's grievance regulations.  Hemphill, 380 F.3d at 690.  However, in Woodford, the Supreme Court held that untimely or otherwise procedurally defective grievances do not satisfy the PLRA's exhaustion requirement.  548 U.S. at 93.  The Second Circuit has not yet determined whether the special circumstances exception to the exhaustion requirement survives Woodford.  See Chavis v. Goord, 333 F. App'x 641, 643 (2d Cir. 2009).  The Court need not reach this issue in this case.

A number of federal circuit courts have held that a failure to respond to a grievance within the time limit prescribed by the prison grievance process renders an administrative remedy unavailable for purposes of exhaustion.  See Jernigan v. Stuchell, 304 F.3d 1030, 1032 (10th Cir. 2002); Lewis v. Washington, 300 F.3d 829, 833 (7th Cir. 2002); Foulk v. Charrier, 262 F.3d 687, 698 (8th Cir. 2001); Underwood v. Wilson, 151 F.3d 292, 295 (5th Cir. 1998).  While the Second Circuit has not directly addressed this issue, it has treated the decision cited above favorably.  See Hemphill, 380 F.3d at 686 n. 6 (citing to the cases above and noting that when an inmate does not receive a response to a grievance there may be a question as to whether administrative remedies were available); Giano v. Goord, 380 F.3d 670, 677 (2d Cir. 2004) (citing favorably to Underwood and Foulk with regard to availability of administrative remedies).  The Second Circuit in Abney cited to Hemphill for the proposition that "exhaustion may be achieved in situations where prison officials fail to timely advance the inmate's grievance."  380 F.3d at 667.

Judges in this district, including the undersigned, have also agreed with the proposition that administrative remedies may be deemed unavailable when the prison fails to timely respond to a grievance.  See Peoples v. Fischer, 11-cv-2694 (SAS), 2012 WL 1575302, at *6 (S.D.N.Y. May 3, 2012) on reconsideration in part, 898 F. Supp. 2d 618 (S.D.N.Y. 2012) ("When a prisoner complies with all of the administrative requirements and makes a good-faith effort to exhaust, he should not be denied the opportunity to pursue his grievance in federal court simply because the final administrative decision maker has neglected to issue a final administrative determination." (alterations, internal quotation marks, and citation omitted)); Manos v. Decker, 03-cv-2370 (PKC), 2005 WL 545215, at *4 (S.D.N.Y. Mar. 7, 2005) (asserting that Abney "held in part that administrative remedies are unavailable when prison

officials fail to respond to grievances within the time period prescribed by regulation"); Dimick v. Baruffo, 02-cv-2151 (LMM), 2003 WL 660826, at *4 (S.D.N.Y. Feb. 28, 2003) (holding that plaintiff's claims were properly exhausted where CORC rendered an untimely decision and plaintiff filed his complaint almost two months after CORC had been required to respond pursuant to the prison grievance procedures).  But see Bennett v. Wesley, 11-cv-8715 (JMF), 2013 WL 1798001, at *6 (S.D.N.Y. Apr. 29, 2013) ("[T]he Court of Appeals has not adopted the position that a delay in responding to a grievance demonstrates per se unavailability." (alterations omitted) (quoting Mateo v. O'Connor, 10-cv-8426 (LAP), 2012 WL 1075830, at *7 (S.D.N.Y. Mar. 29, 2012)); Rivera v. Anna M. Kross Ctr., 10-cv-8696 (RJH), 2012 WL 383941, at *4-5 (S.D.N.Y. Feb. 7, 2012) (asserting that the Second Circuit has declined to hold that administrative remedies are deemed unavailable when a plaintiff receives no response from prison authorities within the prescribed time limits.)

        Here, defendants argue that some of plaintiff's claims were not exhausted before plaintiff brought this action.  (Def. Memo in Support of Motion to Dismiss ("Def. MTD"), pp. 4-6.)  Defendants show that CORC's decision regarding plaintiff's appeal of his May 2013 grievance was issued after the filing of both the original Compliant and the Amended Complaint. (Id. at 5.)  The original Complaint was filed on May 8, 2013, the Amended Complaint was filed on November 19, 2013, and CORC's decision regarding plaintiff's appeal was not issued until December 18, 2013.  (Id.)  Defendants, however, overlook two important points.  First, plaintiff exhausted some of his claims through grievances filed prior to his May 2013 grievance.  Second, in regard to the May 2013 grievance, the CORC failed to issue a decision within the 30 day limit set by the IGP, rendering the administrative remedies unavailable to plaintiff.

Plaintiff's original Complaint sought to enjoin defendants from (1) prohibiting the wearing of his religious turban, (2) prohibiting his celebration of certain religious holy days in a manner consistent with his beliefs, and (3) collecting half of the funds raised by the Rastafari inmate organization.  Each of these claims was properly raised and exhausted through grievances filed on June 17, 2009, September 12, 2011, and March 14, 2012.  (See Hehenberger Decl. Ex. B & D (Dkt. 58).)  The CORC issued a decision regarding the June 2009 grievance on August 5, 2009, ruled on the September 2011 grievance on January 4, 2012, and rendered a decision on the March 2012 grievance on September 5, 2012.  (Id.)  The original Complaint was filed eight months after the resolution of the lattermost grievance at issue.

Plaintiff's Amended Complaint, filed on November 19, 2013, seeks additional relief, including: (1) the addition of October 7 to the religious calendar with various designations; (2) that Rastafari congregate worship be moved to Fridays; (3) that defendants be prohibited from making the menu for holy day meals mandatory; (4) that defendants' failure to provide plaintiff with access to Rastafarian advisers be deemed a constitutional violation; and (5) for the removal of information regarding marijuana use from plaintiff's institutional records. Plaintiff filed a grievance that included these additional claims on May 29, 2013.  (Id. at Ex. C.) After receiving a response from both the IGRC and the superintendent, plaintiff appealed the superintendent's decision to CORC on July 26, 2013.  (Id.)  More than four months passed between the appeal and CORC's decision, issued on December 18, 2013, which is far longer than the 30 day deadline explicitly set forth in the IGP process.  (Id.)  Had the CORC provided a timely response to plaintiff's appeal, plaintiff would have received a response prior to filing the Amended Complaint.  Plaintiff "should not be penalized for the CORC's failure to timely

respond, especially where the eventual response denied the requested relief."[7] Peoples, 2012
WL 1575302, at *9 n. 125.  Because prison officials failed to respond to plaintiff's grievance
within the 30 day time limit set by regulation, administrative remedies were not available to the
plaintiff and dismissal for failure to exhaust is not appropriate.  Defendants' motion to dismiss on
this ground is denied.

II.      The Free Exercise Clause

1.   Legal Standard

"Prisoners have long been understood to retain some measure of the constitutional
protection afforded by the First Amendment's Free Exercise Clause."  Ford v. McGinnis, 352
F.3d 582, 588 (2d Cir. 2003) (citing Pell v. Procunier, 417 U.S. 817, 822 (1974)).  A prisoner's
right to exercise his religion is not absolute and must be balanced against "the interests of prison
officials charged with complex duties arising from administration of the penal system."  Id.
(quoting Benjamin v. Coughlin, 905 F.2d 571, 574 (2d Cir. 1990)).  Accordingly, free exercise
claims of prisoners are judged " 'under a 'reasonableness' test less restrictive than that ordinarily
applied': a regulation that burdens a protected right passes constitutional muster 'if it is
reasonably related to legitimate penological interests.' "  Salahuddin v. Goord, 467 F.3d 263, 274
(2d Cir. 2006) (quoting O'Lone v. Estate of Shabazz, 482 U.S. 342, 349 (1987)).

---

[7] This case is distinguishable from cases where the CORC never renders a decision on the plaintiff's appeal.  Under
those circumstances, district courts in this Circuit have tended to hold that a motion to dismiss or for summary
judgment for failure to exhaust should be granted without prejudice, allowing the plaintiff to refile his complaint
once the CORC responds.  See Fuentes v. Furco, 13-cv-6846 (AJN), 2014 WL 4792110, at *3 (S.D.N.Y. Sept. 25,
2014) (collecting cases).  This approach "balance[s] the PLRA's goal of allowing institutions the first opportunity to
address an inmate's grievances against the inmate's right to a federal forum when he has complied with all of the
procedural formalities expected of him."  Id.  This logic, however, does not extend to the case at bar because the
CORC has denied plaintiff's appeal, and thus has already been given the first opportunity to consider the grievance.
See Peoples, 2012 WL 1575302, at *9.

Under this reasonableness test, a prisoner asserting a free exercise claim "must show at the threshold that the disputed conduct substantially burdens his sincerely held religious beliefs."[8]  Salahuddin, 467 F.3d at 274–75.  "The defendants then bear the relatively limited burden of identifying the legitimate penological interests that justify the impinging conduct; the burden remains with the prisoner to show that these articulated concerns were irrational."  Id. at 275 (alterations and internal quotation marks omitted).

A substantial burden on religious exercise exists "where the state puts substantial pressure on an adherent to modify his behavior and to violate his beliefs."  Woodward v. Perez, 12-cv-8671 (ER), 2014 WL 4276416, at *4 (S.D.N.Y. Aug. 29, 2014) (quoting Jolly v. Coughlin, 76 F.3d 468, 477 (2d Cir. 1996)) (alterations and internal quotation marks omitted).  Plaintiff need not show that the disputed conduct impedes a religious practice mandated by his religion, but he must show that it burdens a religious practice that is "central or important" to his practice of religion.  Ford, 352 F.3d at 593-94.  "Significantly, the plaintiff's burden in demonstrating substantial burden is not a particularly onerous task."  Woodward, 2014 WL 4276416, at *4 (internal quotation marks omitted); see also McEachin v. McGuinnis, 357 F.3d 197, 202 (2d Cir. 2004).

Even if a challenged policy substantially burdens the plaintiff's sincerely held religious beliefs, it is nevertheless valid "if it is reasonably related to legitimate penological

---

[8] The Second Circuit has noted that "[i]t has not been decided in this Circuit whether, to state a claim under the First Amendment's Free Exercise Clause, a prisoner must show at the threshold that the disputed conduct substantially burdens his sincerely held religious beliefs."  Holland v. Goord, 758 F.3d 215, 220 (2d Cir. 2014) (internal quotation marks omitted).  However, the Second Circuit and judges in this district have continued to require such a threshold showing, particularly in cases where the parties have not argued otherwise.  See Ford, 352 F.3d at 592 (applying the substantial burden test where the parties did not brief the issue and the plaintiff did not argue otherwise); see also Salahuddin, 467 F.3d at 275 n.5 (declining to decide whether the substantial burden test applied where resolution of the issue was unnecessary for purposes of the appeal); Woodward v. Perez, 12-cv-8671 (ER), 2014 WL 4276416, at *3 (S.D.N.Y. Aug. 29, 2014) (applying the substantial burden test because plaintiff satisfied this threshold step).  Here, the Court will apply the substantial burden test as neither party has argued against employing this standard.

interests." <u>Turner v. Safley</u>, 482 U.S. 78, 89 (1987); <u>see also</u> <u>Ford</u>, 352 F.3d at 595.  When

evaluating whether a regulation or official action is reasonable, courts are guided by four factors:

(1) "whether the challenged regulation or official action has a valid, rational connection to a

legitimate governmental objective;" (2) "whether prisoners have alternative means of exercising

the burdened right;" (3) "the impact on guards, inmates, and prison resources of accommodating

the right;" and (4) "the existence of alternative means of facilitating exercise of the right that

have only a de minimis adverse effect on valid penological interests."  <u>Salahuddin</u>, 467 F.3d at

274 (citing <u>Turner</u>, 482 U.S. at 89–91).

       2.  Analysis

       A.  Substantial Burden

       On this motion, defendants do not challenge that plaintiff has alleged sincerely

held religious beliefs; rather defendants argue that plaintiff fails to allege facts that show that his

religious beliefs were substantially burdened.  (Def. MTD, pp. 6, 9.)  The Court concludes that

plaintiff has plausibly alleged that defendants have substantially burdened his right to freely

exercise his religion as to some but not all of the religious practices he wishes to engage in.

       i.    Claims Involving the Religious Calendar

       As noted above, DOCCS has added all of the holy days at issue to the religious

calendar, but with varying limitations regarding how each day may be celebrated.  (Revised

Calendar, p. 25.)  The requests that were accommodated are moot.  The Court must address

whether plaintiff states a claim with respect to those requests which have not been voluntarily

accommodated, which include: (1) exemption from work and the provision of a shared meal on

April 21 and May 25; (2) permission for a congregate worship service on May 25; and (3) the

designation of April 21 and August 17 as "family events."  Plaintiff has plausibly alleged a

substantial burden on his free exercise of religion with regard to all of the contested holy day restrictions, with the exception that plaintiff cannot reach this threshold burden on his claim concerning "family events."

Plaintiff has shown that celebrating the four holy days at issue by refraining from work and programming, attending a congregate worship service, and sharing a holy day meal is "central or important" to his faith. See Ford, 352 F.3d at 593-94. In the telephone conferences and hearings before Magistrate Judge Freeman, plaintiff explained why the holy days are sacred, stating that April 21 is "the day that Emperor Selassie came to Jamaica" (July Tr., p. 13), May 25 is African Liberation Day (Telephone Conference before Magistrate Judge Freeman, March 18, 2014 ("March Tr."), p. 19), August 17 is the birthday of the Rastafari prophet Marcus Mosiah Garvey, (July Tr., p. 24.) and October 7 "respects the day that Emperor Haile Selassie was named heir apparent prior to his coronation."[9] (March Tr., p. 19.) He testified that each holy day at issue should be celebrated in the same manner, by coming together with other Rastafari observers for a congregate service called a "reasoning" and a shared meal, and by refraining from work. (July Tr., pp. 13, 20, 25-26.) The Court concludes that plaintiff has plausibly alleged a substantial burden on his religious beliefs to the extent that plaintiff alleges defendants continue to deny him an exemption from work and provision of a shared meal on April 21 and May 25 and have failed to permit a congregate worship service on May 25. See Ford, 352 F.3d at 593-94 (asserting that being denied a holiday meal would be considered a substantial burden on the plaintiff's religious beliefs if participation in the meal was considered central or important

---

[9] In the Amended Complaint plaintiff identifies, but does not allege the significance of, certain holy days that defendants have denied him the right to celebrate. In the conferences and hearings before Magistrate Judge Freeman, plaintiff explained the religious significance of each holy day at issue and described how the days must be observed according to his faith. The Court deems these statements to be incorporated into plaintiff's pleadings. Considering these statements on the present motion to dismiss comports with the special solicitude afforded pro se litigants.

to his practice of religion); Salahuddin v. Coughlin, 993 F.2d 306, 308 (2d Cir. 1993) ("It is well established that prisoners have a constitutional right to participate in congregate religious services.").

        Plaintiff fails, however, to plausibly allege that his free exercise rights are substantially burdened by the denial of his request to designate April 21 and August 17 as "family events."  He asserts, "Rastafari family is the center of Rasta society," (Am. Compl., ¶ 16 n. 1) and that "[d]uring holy days' celebrations, it is necessary for the family to celebrate together, representing the unity established by Emperor Haile Selassie I, Empress Menen, and the Royal Children."  (Pl. Objection to Magistrate Judge's R & R ("Pl. Objection"), p. 1.)  These conclusory allegations fail to adequately explain the religious significance of the "family event."  Nor does plaintiff explain why celebration with family carries religious significance for the holy days of April 21 and August 17, but not for the other holy days at issue.  Plaintiff fails to show that celebration with family is "central or important" to his religious beliefs, and thus cannot state a claim under the Free Exercise Clause as to this request.

        ii.     Holy Day Menus

        It has long been established that "prison authorities must accommodate the right of prisoners to receive diets consistent with their religious scruples."  Kahane v. Carlson, 527 F.2d 492, 495 (2d Cir. 1975); see also McEachin, 357 F.3d at 203 ("[C]ourts have generally found that to deny prison inmates the provision of food that satisfies the dictates of their faith does unconstitutionally burden their free exercise rights.")

        Plaintiff has failed to plausibly allege that DOCCS's policy prohibiting inmates from adding items to the holy day menu substantially burdens his religious exercise.  (Am. Compl., ¶ 27.)  He does not allege that the holy day meals are inconsistent with his religious

beliefs nor does he explain how his ability to add certain items to the meals is "central or important" to his religion.  See Kahane, 527 F.2d at 496 (holding that a prison was required to provide an orthodox Jewish rabbi with a diet that maintained his good health and did not violate Jewish dietary laws, but refusing to mandate any specific food item or method for fulfilling this order, as "[s]uch details are best left to the prison's management which can provide from the food supplies available within budgetary limitations").  Accordingly, plaintiff does not plausibly allege a Free Exercise Clause claim as to the so-called "mandatory menu" provided by DOCCS for holy day meals.

      iii.    Friday Worship

Plaintiff asserts that he has "been forced to have congregate worship on Wednesdays instead of the traditional Fridays."  (Am. Compl., ¶ 26.)  Plaintiff has plausibly alleged that this restriction substantially burdens his right to free exercise.  "It is well established that prisoners have a constitutional right to participate in congregate religious services." Salahuddin v. Coughlin, 993 F.2d at 308; see also Young v. Coughlin, 866 F.2d 567, 570 (2d Cir. 1989) ("Although we recognize that great deference should be accorded to prison officials as they undertake the difficult responsibility of maintaining order in prisons, we have long held that prisoners should be afforded every reasonable opportunity to attend religious services, whenever possible.").  In Lloyd v. City of New York, 12-cv-03303 (CM), 2014 WL 4229936, at *5-6 (S.D.N.Y. Aug. 4, 2014), the court held that Muslim inmates plausibly alleged a substantial burden on their religious exercise where they were unable to conduct religious services in a manner that complied with their religious beliefs.  The plaintiffs in Lloyd, for example, were forced to conduct religious services in a chapel where the pews prevented them from kneeling for prayer.  Id.  Here, plaintiff has plausibly alleged that defendants have substantially burdened

his ability to participate in religious services in a manner consistent with the practices of his religion.  Plaintiff alleges that he is forced to conduct services on Wednesdays, but he asserts that Friday is the traditional day of worship.  (See Am. Compl., ¶ 26.)  He explains that the appropriate day for Rastafari congregate worship is Friday because it "carries the Rastafarian Community into the Sabbath," which begins on Friday at sundown.  (Id.)  Plaintiff plausibly alleges that his inability to hold Friday Sabbath services substantially burdens his free exercise of religion.

iv.   Turban

Plaintiff has plausibly alleged that defendants substantially burden his right to free exercise by denying him the right to wear his religious turban.  See Singh v. Goord, 520 F. Supp. 2d 487, 502-03 (S.D.N.Y. 2007) (holding that defendants substantially burdened plaintiff's religious exercise where plaintiff was prohibited from wearing the type of turban required by his religion); Morgan v. City of New York., 12-cv-704 (WFK), 2014 WL 3407714, at *8 (E.D.N.Y. July 10, 2014) ("Plaintiff has shown that the removal of his turban substantially burdens his sincerely held religious beliefs.")  Plaintiff has explained the significance of wearing a turban in the Rastafari religion, testifying that the "Nya[h]binghi Rastaman's head must be covered" and that wearing a turban represents "the complete discipline of the Rastaman in terms of a priestly life."[10]  (July Tr., p. 37-39.)  Plaintiff alleges that the only headgear Rastafari males are permitted to wear at Woodbourne is the Tsalot Kob, which is a type of headgear restricted to members of the Ba Beta Kristiyan Church and does not align with plaintiff's sincerely held religious beliefs.  (Id. at 38-42; Am. Compl., ¶¶ 20-21.)  Plaintiff does not provide a full

---

[10] In the Amended Complaint plaintiff alleges that the denial of his religious turban violates his First Amendment rights, but he fails to allege the significance of the turban to his religious beliefs.  In the hearings before Magistrate Judge Freeman, plaintiff explained the religious significance of wearing his turban.  The Court deems these statements to be incorporated into plaintiff's pleadings.

explanation of the how the Rastafari sect that plaintiff adheres to, the Nyahbinghi "mansion," is distinct from the Ba Beta Kristiyan Church, nor does he elaborate on why wearing a Tsalot Kob does not comport with his religious beliefs.  Nevertheless, given the special solicitude afforded to pro se plaintiffs, the Court concludes that plaintiff has adequately pled that defendants' prohibition on the wearing of his religious turban substantially burdens his sincerely held religious beliefs.  The issue may look different at the summary judgment stage.

            v.       Fundraising Proceeds

            Plaintiff challenges defendants' policy of collecting half of the Rastafari inmate organization's fundraising proceeds; however, he fails to adequately explain how this practice constitutes a substantial burden on his religious beliefs.  Plaintiff explains that the collection of half of the organization's funds "creates a burden on [the Rastafari group's] ability to purchase necessary materials for congregate services, religious classes, and religious holy day celebrations."  (Am. Compl., ¶ 24.)  While forbidding or confiscating religious materials may in some instances support a free exercise claim, see Breland v. Goord, 94-cv-3696 (HB), 1997 WL 139533, at *5-6 (S.D.N.Y. Mar. 27, 1997) (holding a claim regarding the confiscation of a prisoner's religious literature survives summary judgment), plaintiff does not assert that defendants have prohibited him from obtaining religious materials.  Nowhere does plaintiff claim he is restricted from either buying the religious materials he desires with the funds the Rastafari group retains or obtaining the materials from another source.  Plaintiff does not show how the deprivation of half of the funds constitutes a substantial burden on his religious beliefs.  As plaintiff has failed to plausibly allege a substantial burden, his free exercise claim challenging defendants' collection of half of the funds raised by the Rastafari organization is dismissed.

vi.     Rastafarian advisers

Plaintiff alleges that defendants violated his rights when they denied his request to gain access to spiritual and religious advisers.  (Am. Compl., ¶ 19.)  Plaintiff fails, however, to plausibly allege that defendants' actions substantially burden his free exercise of religion.  He makes no showing regarding how contact with advisers is "central or important" to the practice of his faith.  Thus, his free exercise claim based on lack of access to advisers is dismissed.

vii.     Reporting of Marijuana Use

Plaintiff claims that defendant Davis, a drug counselor at Woodbourne, falsely reported that plaintiff admitted to using marijuana for religious rituals to justify recommending him to a drug treatment program.  (Am. Compl., ¶ 28.)  He claims that defendant's false reporting was a result of "unconstitutional stereotyping of plaintiff based on his religious beliefs" and the ritual use of marijuana within the Rastafari faith.  (Id.)  Plaintiff, however, fails to explain how defendant's purported stereotyping burdened his free exercise of religion, nor does he show how being recommended for a drug treatment program has any effect on his religious practice.  Thus, plaintiff does not state a claim under the Free Exercise Clause as to the alleged false reporting of marijuana use.

B.  Penological Interest

With regard to the claims for which plaintiff has plausibly alleged a substantial burden, defendants contend that they have proffered a legitimate penological interest which justifies not allowing the practice in question.  (Def. MTD, p. 6.)  Defendants cite "safety and security" concerns for their prohibition of plaintiff's turban and identify "spatial restrictions" as the reason for requiring Rastafari Sabbath services to be held on Wednesdays rather than

Fridays.  (Id. at 11, 13-14.)  Defendants do not to offer a justification for their policy regarding plaintiff's religious calendar claims.  (Id. at 8-9.)

Determining whether a challenged policy is reasonably related to a legitimate penological interest is a fact-laden inquiry that is generally ill-suited for resolution on a motion to dismiss.  See Ford, 352 F.3d at 596 (refusing to determine whether defendants' conduct was reasonably related to legitimate penological interests because "the record [was] insufficient to resolve this fact—and context—specific dispute").  On this motion to dismiss, the Court cannot assess whether there is a "valid, rational connection" between defendants' actions and their purported concerns.  See Turner, 482 U.S. at 89.  Defendants state in a conclusory manner that the ban on plaintiff's religious turban is due to safety and security concerns, but fail to explain how plaintiff's turban presents a security problem or why concerns exist with respect to plaintiff's turban but not with the other types of permitted headgear.  (See Def. MTD, pp. 13-14.) Next, while defendants explain that there is a lack of available space for Rastafarians to conduct congregate worship on Fridays (id. at 11), the Court is unable to assess, based on the limited record, the impact accommodation would have on the guards, other inmates, and prison resources and whether there is an "absence of ready alternatives."  See Turner, 482 U.S. at 90. The Court will not, at this stage, dismiss any of plaintiff's claims based on defendants' stated penological interests.  The Court acknowledges that the case may look very different at the summary judgment stage.

To recap, the following free exercise claims survive defendant's motion to dismiss: (1) the denial of plaintiff's ability to observe all four of the Rastafari holy days at issue on his motion by (a) refraining from working or attending programs, (b) attending a congregate

worship service, and (c) sharing a holy day meal with other Rastafari inmates; (2) the denial of

Friday Sabbath services; and (3) the prohibition on plaintiff's religious turban.

III.     The Establishment Clause and the Equal Protection Clause

While plaintiff asserts violations of the Free Exercise Clause, the Establishment

Clause, and the Equal Protection Clause, the parties only briefed the claims under the Free

Exercise Clause.  Where plaintiff has plausibly alleged a free exercise violation, the Court need

not decide at this time whether plaintiff also states a claim under the Establishment Clause or the

Equal Protection Clause.  Because these claims have survived, the Court can make this

determination at a later stage after the parties have briefed the issues.  However, where plaintiff

fails to state a claim under the Free Exercise Clause, the Court will determine whether the claim

can nevertheless survive under the Establishment Clause or the Equal Protection Clause.

Plaintiff fails to plead any facts to support a claim under the Establishment Clause

with respect to: (1) the designation of April 21 and August 17 as "family events;" (2) the denial

of spiritual and religious advisers; and (3) the false reporting regarding plaintiff's marijuana use.

Plaintiff fails to plead any facts to support an Equal Protection Clause claim as to: (1) the

designation of "family events;" (2) the policy of collecting half of the Rastafari inmate

organization's fundraising proceeds; and (3) the mandatory nature of holy day menus.  As such,

the claim regarding "family events" is dismissed, see Iqbal, 556 U.S. at 678, and the Court will

analyze plaintiff's holy day menu and fundraising claims under the Establishment Clause and his

religious adviser and false reporting claims under the Equal Protection Clause.  For reasons to be

explained, the Court dismisses each of these four claims.

1.   The Establishment Clause

The First Amendment of the Constitution provides that "Congress shall make no law respecting an establishment of religion."  U.S. Const. amend. I.  In deciding an Establishment Clause claim, courts in this Circuit continue to apply the three-prong test articulated by the Supreme Court in Lemon v. Kurtzman, 403 U.S. 602 (1971).  See Bronx Household of Faith v. Bd. of Educ. of City of New York, 650 F.3d 30, 40 n. 9 (2d Cir. 2011) ("Although the Lemon test has been much criticized, the Supreme Court has declined to disavow it and it continues to govern the analysis of Establishment Clause claims in this Circuit."); see also Westchester Day Sch. v. Vill. of Mamaroneck, 504 F.3d 338, 355 (2d Cir. 2007); Kiryas Joel Alliance v. Vill. of Kiryas Joel, 495 F. App'x 183, 190 (2d Cir. 2012).  Under Lemon, "government action which interacts with religion (1) must have a secular purpose, (2) must have a principal or primary effect that neither advances nor inhibits religion, and (3) must not foster an excessive government entanglement with religion."  Bronx Household of Faith, 650 F.3d at 40 (alterations and internal quotation marks omitted) (citing Lemon, 403 U.S. at 612-13).  "Because plaintiff is a prisoner challenging a Department of Corrections directive, the Lemon test is tempered by the test laid out by the Supreme Court in Turner . . . which found that a prison regulation that impinges on an inmate's constitutional rights is nevertheless valid if it is reasonably related to legitimate penological interests."  Pugh v. Goord, 571 F. Supp. 2d 477, 494 (S.D.N.Y. 2008) (quoting Salahuddin v. Perez, 99-cv-10431 (LTS), 2006 WL 266574, at *9 (S.D.N.Y. Feb. 2, 2006) (internal quotation marks omitted)).

First, plaintiff claims that by denying him the ability to supplement holy day meals with additional food items, defendants have given the "New York State Department of Nutritional Services unfettered authority to dictate the dietary laws of the Rastafarian community

for holy day celebrations."  (Am. Compl., ¶ 27.)  He concludes that DOCCS's "Nutritional

Services is in effect acting as an ecclesiastical body for the Rastafarian community."  (Id.)

Defendants counter that "a perfect accommodation of each inmate's preferential meal choices"

would be "prohibitively expensive."  (Def. MTD, p. 13.)

  Plaintiff fails to state a claim under the Establishment Clause pursuant to the

Lemon analysis.  See 403 U.S at 612-13.  First, the prison's policy has the permissible purpose

of attempting to reasonably accommodate the inmates' religious dietary practices without

subjecting the prison "to prohibitively expensive accommodations of religious dietary meal

requests."  (Id.)  See Benjamin v. Coughlin, 905 F.2d 571, 579 (2d Cir. 1990) (asserting that

prisoners have a right to receive diets consistent with their religious beliefs but that this right

may be limited where accommodation is prohibitively expensive or administratively unfeasible).

Second, plaintiff has failed to allege that DOCCS's policy regarding holy day menus has the

primary effect of either advancing or inhibiting religion.  Plaintiff does not claim that the holy

day meals are inconsistent with his religious beliefs.  Finally, DOCCS's policy does not foster

excessive entanglement of government with religion.  "In order to permit inmates to freely

exercise their religion, *some* entanglement is necessary."  Muhammad v. City of New York Dep't

of Corr., 904 F. Supp. 161, 198 (S.D.N.Y. 1995) (emphasis in original) ("[I]n the prison context,

the [E]stablishment [C]lause has been interpreted in the light of the affirmative demands of the

[F]ree [E]xercise [C]lause." (internal quotation marks omitted)).  DOCCS developed a menu for

holy day celebrations in order to accommodate inmates' free exercise right to receive a diet

consistent with their religious beliefs.  This does not constitute excessive government

entanglement with religion.  As such, plaintiff's claim regarding the holy day menus is

dismissed.

Next, plaintiff asserts that "the policy of requiring the Rastafarians to surrender 50% of their fundrais[ing proceeds] had the effect of a tax on religion."  (Am. Compl., ¶ 24.) This allegation fails to plausibly allege a violation under the Establishment Clause.  First, as plaintiff acknowledges, the policy has the secular purpose of providing funds to the Inmate Occupational Therapy Fund ("IOTF"), which is "for the benefit of the general population's use." (Id. ¶ 23.)  The policy does not have the primary effect of advancing or inhibiting religion.  The fundraising requirement is applied equally to religious and non-religious groups, and plaintiff does not adequately allege how the policy inhibits or burdens his religion.  (Id.)  Finally, the policy does not foster excessive government entanglement with religion.  Thus, plaintiff's claim as to defendants' policy regarding fundraising proceeds is dismissed.

2.   The Equal Protection Clause

The Equal Protection Clause of the Fourteenth Amendment "is essentially a direction that all persons similarly situated should be treated alike."  City of Cleburne, Tex. v. Cleburne Living Ctr., 473 U.S. 432, 439 (1985).  To state a claim for an equal protection violation, a plaintiff must plausibly allege "that he was treated differently than others similarly situated as a result of intentional or purposeful discrimination."  Phillips v. Girdich, 408 F.3d 124, 129 (2d Cir. 2005).  Courts in the Second Circuit have emphasized that "it is axiomatic that a plaintiff must allege that similarly situated persons have been treated differently."  Gagliardi v. Vill. of Pawling, 18 F.3d 188, 193 (2d Cir. 1994); see also Bishop v. Best Buy, Co. Inc., 08-cv-8427 (LBS), 2010 WL 4159566, at *11 (S.D.N.Y. Oct. 13, 2010) ("Well-pled facts showing that the plaintiff has been treated differently from others similarly situated, remains an essential component of [an equal protection] claim." (internal quotation marks omitted)).  "While the Turner . . . standard was established in the context of first amendment issues, it is also relevant to

- 25 -

the assessment of equal protection claims in the prison setting." Benjamin v. Coughlin, 905 F.2d 571, 575 (2d Cir. 1990). Thus, "the reasonableness of the prison rules and policies must be examined to determine whether distinctions made between religious groups in prison are reasonably related to legitimate penological interests." (Id.)

Plaintiff's claim regarding defendant Davis's alleged false report fails to state a claim under the Equal Protection Clause because plaintiff fails to allege that he was treated differently than others. In Bishop, plaintiff's equal protection claim, alleging that he was discriminated against on the basis of his race, was dismissed because the plaintiff "failed 'to allege or identify a single similarly situated [individual] who was treated differently.' " 2010 WL 4159566, at *12 (quoting Sweeney v. City of New York, 03-cv-4410 (JSR)(RLE), 2004 WL 744198, at *5 (S.D.N.Y. Apr. 2, 2004) subsequently aff'd, 186 F. App'x 84 (2d Cir. 2006)); see also King v. New York State Div. of Parole, 260 Fed. App'x. 375, 379–80 (2d Cir. 2008) (affirming dismissal of equal protection claim where petitioner "failed to identify a single individual with whom he can be compared for Equal Protection purposes"). Here, plaintiff makes no claim regarding how others were treated during their interviews for the drug treatment program. Thus, plaintiff's equal protection claim regarding religious stereotyping with regard to the alleged false report of his marijuana use is dismissed. As this is the only claim that implicates defendant Davis, she is dismissed from this case.

Next, plaintiff alleges that being denied spiritual advisers for security reasons violates his equal protection rights because "[o]ther religious groups are allowed to have religious and spiritual advisors without breaching security concerns." (Am. Compl., ¶ 19.) This allegation is conclusory and fails to identify any specific religious group that is being treated differently. See Bishop, 2010 WL 4159566, at *11 ("Conclusory allegations of selective

treatment are insufficient to state an equal protection claim.").  Plaintiff's equal protection claim

regarding spiritual advisers is dismissed.

IV.    Injunctive Relief

Defendants seek to dismiss plaintiff's claims for injunctive relief for lack of merit

and mootness.  (Def. MTD, pp. 17-20.)  Defendants have not established that all of plaintiff's

holy day claims are moot.  Injunctive relief, however, may not be premised upon claims that this

Court has dismissed.

Plaintiff asserts six claims for injunctive relief.  (Am. Compl., ¶ B)  First, plaintiff

seeks to enjoin defendants from "continuing to deny plaintiff and other Rastafarians their holy

days."  (Id. ¶ B(1).)  Second, plaintiff seeks injunctive relief to allow him to wear his turban. (Id.

¶ B(2).)  Third, plaintiff seeks to enjoin defendants from enforcing the policy which mandates

that the Rastafarian inmate organization surrender half of the funds it raises to the IOTF.  (Id. ¶

B(3).)  Fourth, plaintiff seeks an injunction enjoining defendants from retaliating against him.

(Id. ¶ B(4).)  Fifth, plaintiff seeks to direct defendant Davis to expunge the "stereotyped

information from plaintiff's institutional records." (Id. ¶ B(5).)  Sixth, plaintiff seeks to enjoin all

defendants from "continuing to deny him his right to freely practice his faith."  (Id. ¶ B(6).)

Defendants assert that none of plaintiff's claims for injunctive relief can be

sustained as a matter of law.  (Def. MTD, p. 17.)  "To obtain a permanent injunction, a plaintiff

must succeed on the merits and show the absence of an adequate remedy at law and irreparable

harm if the relief is not granted."  Roach v. Morse, 440 F.3d 53, 56 (2d Cir. 2006) (internal

quotation marks omitted).  Defendants reason that because "Plaintiff is unable to succeed on the

merits of his claims" permanent injunctive relief is not warranted.  (Def. MTD, p. 18.)  At the

pleading stage, defendants are correct only with respect to some of plaintiff's claims.  The Court

has found that plaintiff has plausibly alleged a constitutional violation with respect to his claims regarding the observance of Rastafari holy days and the wearing of his turban.  Accordingly, plaintiff's claims for injunctive relief regarding these rights may not properly be dismissed. However, the Court has determined that plaintiff's claims regarding the purported false report of plaintiff's marijuana use and defendants' policy of collecting half of the Rastafari inmate organization's fundraising proceeds do not state a claim.  Thus, plaintiff's claims to (1) to expunge references to marijuana use from his institutional records and (2) enjoin defendants from requiring the Rastafarian organization to surrender half of their funds, are dismissed because the underlying claims upon which they are premised are dismissed.

Plaintiff's claim that seeks to prevent future retaliation is also dismissed, as plaintiff fails to plead any facts whatsoever to show that defendants have or would retaliate against plaintiff.  See Iqbal, 556 U.S. at 678 ("[A] complaint must contain sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face." (internal quotation marks omitted)); see also Reiter v. Metro. Transp. Auth. of N.Y., 01-cv-2762 (JGK), 2003 WL 22271223, at *15 (S.D.N.Y. Sept. 30, 2003) (denying plaintiff's request for a permanent injunction to prevent retaliation because there was no showing that plaintiff would be retaliated against in the future).

Next, defendants argue that injunctive relief is not appropriate concerning the religious calendar because "it is quite possible that this litigation could continue after Plaintiff's particular sect of Rastafarianism ceases to have followers that are inmates under DOCCS' supervision or custody" and "[a]s such, Plaintiff's request for injunctive relief would be moot." (Def. MTD, p. 19.)  This argument lacks merit, as plaintiff brings his claims individually and he is currently an inmate at Woodbourne.  "In order for a federal court to retain jurisdiction over a

case, an actual controversy must exist at all stages of review, not merely at the time the complaint is filed." Prins v. Coughlin, 76 F.3d 504, 506 (2d Cir. 1996) (internal quotation marks omitted).  At this time, an actual controversy regarding the religious calendar exists as to the claims that defendants have not voluntarily accommodated.  As such, not all of plaintiff's religious calendar claims are moot.

V.      Personal Involvement

Defendants contend that plaintiff has failed to allege the personal involvement of defendants Fischer, Jacobson, and Leonard, and as such, they should be dismissed from this suit. (Def. MTD, pp. 15-17.)  The Court holds that plaintiff has plausibly alleged the personal involvement of the three defendants at issue.

"It is well settled in this Circuit that personal involvement of defendants in alleged constitutional deprivations is a prerequisite to an award of damages under § 1983." Farrell v. Burke, 449 F.3d 470, 484 (2d Cir. 2006) (quoting Wright v. Smith, 21 F.3d 496, 501 (2d Cir. 1994)).  Individual liability under section 1983 may not be anchored in a theory of respondeat superior.  Hemmings v. Gorczyk, 134 F.3d 104, 109 n. 4 (2d Cir. 1998) (per curiam). "The bare fact that [a defendant] occupies a high position in the New York prison hierarchy is insufficient to sustain [a] claim." Colon v. Coughlin, 58 F.3d 865, 874 (2d Cir. 1995).  Further, "[c]onclusory accusations regarding a defendant's personal involvement in the alleged violation, standing alone, are not sufficient." Kee v. Hasty, 01-cv-2123 (KMW)(DF), 2004 WL 807071, at *12 (S.D.N.Y. Apr. 14, 2004).

In Colon, the Second Circuit held that the personal involvement of a supervisory defendant can be shown by evidence that:

(1) the defendant participated directly in the alleged constitutional violation, (2) the defendant, after being informed of the violation through a report or appeal, failed

> to remedy the wrong, (3) the defendant created a policy or custom under which unconstitutional practices occurred, or allowed the continuance of such a policy or custom, (4) the defendant was grossly negligent in supervising subordinates who committed the wrongful acts, or (5) the defendant exhibited deliberate indifference to the rights of inmates by failing to act on information indicating that unconstitutional acts were occurring.

58 F.3d at 873.  The continuing vitality of the supervisory liability test established in Colon has come into question after the Supreme Court's 2009 decision in Iqbal.  See Reynolds v. Barrett, 685 F.3d 193, 205 n. 14 (2d Cir. 2012).  There, the Supreme Court noted that "[b]ecause vicarious liability is inapplicable to . . . § 1983 suits, a plaintiff must plead that each Government-official defendant, through the official's own individual actions, has violated the Constitution."  Iqbal, 556 U.S. at 676.

The Second Circuit has not yet definitively addressed how Iqbal affects the Colon factors, nor have the district courts within this Circuit reached a clear consensus.  See Aguilar v. Immigration & Customs Enforcement Div., 811 F. Supp. 2d 803, 814 (S.D.N.Y. 2011).  Despite the lack of agreement regarding the Colon factors, courts agree that the third factor, that defendant created a policy or custom under which unconstitutional practices occurred, has survived Iqbal.  Compare Bellamy v. Mount Vernon Hosp., 07-cv-1801 (SAS), 2009 WL 1835939, at *6 (S.D.N.Y. June 26, 2009) ("Only the first and part of the third Colon categories pass Iqbal's muster—a supervisor is only held liable if that supervisor participates directly in the alleged constitutional violation or if that supervisor creates a policy or custom under which unconstitutional practices occurred."), aff'd sub nom. Bellamy v. Mount Vernon Hosp., 387 F. App'x 55 (2d Cir. 2010), with Hodge v. Sidorowicz, 10-cv-428 (PAC)(MHD), 2011 WL 6778524, at *16 (S.D.N.Y. Dec. 20, 2011) ("[W]here the claim does not require a showing of discriminatory intent, the personal-involvement analysis set forth in Colon should still apply."), report and recommendation adopted sub nom. Hodge v. Wladyslaw, 10-cv-428 (PAC)(MHD),

2012 WL 701150 (S.D.N.Y. Mar. 6, 2012).  It is under this factor that plaintiff claims defendants Fischer, Jacobson, and Leonard were personally involved.

Plaintiff alleges that Brian Fischer, as the Commissioner of DOCCS, "has the statutory authority to promulgate rules, regulations, and policies governing the religious rights of prisoners within the department." (Am. Compl., ¶ 4.)  Similarly he alleges that Catherine Jacobsen as Acting Deputy Commissioner for Program Services "had the authority to approve policies governing the religious programs in [DOCCS]," (id. ¶ 5), and that Mark Leonard, as the Director of Ministerial, Family, and Volunteer Services "was responsible for the promulgation of policies affecting the religious rights of all Rastafarian prisoners within [DOCCS]."  (Id. ¶ 8.)  Plaintiff attributes DOCCS's policies on holy days and headgear to Fischer, Jacobsen, and Leonard, along with other defendants.  (Id. ¶ A(1).)  A defendant that creates a policy is considered personally involved in any unconstitutional practices that occur under the policy.  See Colon, 58 F.3d at 873.  In Pugh v. Goord, 571 F. Supp. 2d 477, 485-86 (S.D.N.Y. 2008), the plaintiff argued that certain defendants, by creating and continuing policies regarding the accommodation of Shi'ite Muslims, were personally involved in the deprivation of his right as a Shi'ite inmate to have a separate prayer service from the Sunni Muslims.  The court agreed with the plaintiff and found that because plaintiff showed that defendants made "certain contributions to formulation of policy," he had adequately established personal involvement with regard to these defendants.  Id. at 513 (internal quotation marks omitted).  Similarly, plaintiff has plausibly alleged that defendants Fischer, Jacobson, and Leonard were involved in creating policies under which his right to free exercise was substantially burdened.  Thus, these defendants are not properly dismissed from this suit at this juncture.

Plaintiff also alleges that defendant Fischer is personally involved in the alleged constitutional violations because he has written letters to defendant Fischer "complaining about the unconstitutional impediments to plaintiff's ability to practice his faith," but Fischer has always referred plaintiff's complaints to subordinates.  (Am. Compl., ¶ 25.)  Defendants are correct in stating that this allegation cannot demonstrate the requisite personal involvement of Fischer.  (See Def. MTD, p. 16.)  "If the supervisor fails to respond to [a prisoner's] letter or passes the letter on to a subordinate to handle, the general rule is that the supervisor is not personally involved."  Lloyd, 2014 WL 4229936, at *9; see also Sealey v. Giltner, 116 F.3d 47, 51 (2d Cir. 1997) (holding that the inmate failed to produce sufficient evidence to establish personal involvement of the prison commissioner, where the commissioner referred plaintiff's appeal letter to a subordinate); Smart v. Goord, 441 F. Supp. 2d 631, 643 (S.D.N.Y. 2006) on reconsideration in part, 04-cv-8850 (RWS), 2008 WL 591230 (S.D.N.Y. Mar. 3, 2008) (stating that defendant "cannot be held liable on the sole basis that he did not act in response to letters of protest" sent by inmate).  Nevertheless, because plaintiff has plausibly alleged Fischer's personal involvement in creating policies under which unconstitutional practices have occurred, Fischer is not dismissed from this suit.

VI.    Qualified Immunity

Defendants argue that qualified immunity shields them from money damages. (Def. MTD, pp. 20-25.)  On this motion to dismiss, the Court cannot conclude that defendants are entitled to qualified immunity as a matter of law.  The case may look very different at the summary judgment phase.

Qualified immunity protects public officials performing discretionary functions "from liability for civil damages insofar as their conduct does not violate clearly established

- 32 -

statutory or constitutional rights of which a reasonable person would have known." <u>Harlow v. Fitzgerald</u>, 457 U.S. 800, 818 (1982).  A government official is entitled to qualified immunity "if either (a) the defendant's action did not violate clearly established law, or (b) it was objectively reasonable for the defendant to believe that his action did not violate such law." <u>Johnson v. Newburgh Enlarged Sch. Dist.</u>, 239 F.3d 246, 250 (2d Cir. 2001); <u>see also</u> <u>Luna v. Pico</u>, 356 F.3d 481, 490 (2d Cir. 2004).  In deciding whether defendants are entitled to qualified immunity, courts must look "to both the clarity of the law establishing the right allegedly violated as well as whether a reasonable person, acting under the circumstances the[n] confronting a defendant, would have understood that his actions were unlawful." <u>Ford v. McGinnis</u>, 352 F.3d 582, 596-97 (2d Cir. 2003) (quoting <u>Hanrahan v. Doling</u>, 331 F.3d 93, 98 (2d Cir. 2003) (per curiam)) (internal quotation marks omitted).  "The question is not what a lawyer would learn or intuit from researching case law, but what a reasonable person in the defendant's position should know about the constitutionality of the conduct." <u>Coollick v. Hughes</u>, 699 F.3d 211, 220 (2d Cir. 2012) (alterations and citation omitted).  While a defendant may assert a qualified immunity defense on a motion to dismiss, "the defense faces a formidable hurdle when advanced on such a motion." <u>McKenna v. Wright</u>, 386 F.3d 432, 434 (2d Cir. 2004).

   Defendants have failed to show that restricting plaintiff from celebrating certain holy days in a manner consistent with his religious beliefs, requiring Friday Sabbath services to be held on Wednesdays, and prohibiting him from wearing a religious turban do not violate clearly established law.  An inmate has a "clearly established right to be free of unjustified burdens upon free exercise rights." <u>Salahuddin v. Dalsheim</u>, 94-cv-8730 (RWS), 1996 WL 384898, at *12 (S.D.N.Y. July 9, 1996) (citations omitted); <u>see also</u> <u>Turner v. Safley</u>, 482 U.S. 78, 89 (1987).  In <u>Salahuddin v. Goord</u>, the Second Circuit held that because plaintiff's "free-

exercise rights were substantially burdened by a joint-worship policy not justified by a legitimate penological interest," qualified immunity was not appropriate as "it was clearly established at the time of the alleged violation that prison officials may not substantially burden inmates' right to religious exercise without some justification."  467 F.3d 263, 275-76 (2d Cir. 2006).  Similarly here, because the Court holds that plaintiff has plausibly alleged that defendants substantially burdened his free exercise rights and, at this time, have not established a legitimate penological justification, defendants are not entitled to qualified immunity on the premise that their conduct did not violate clearly established law.

Whether defendants could have reasonably believed that they did not violate an established constitutional right depends, at this stage, "on whether, on the facts alleged in the Complaint, they had a reasonable basis to believe that that [sic] [their actions] served a legitimate penological interest." Diggs v. Marikah, 11-cv-6382 (PAE), 2012 WL 934523, at *5 (S.D.N.Y. Mar. 20, 2012) (denying defendants' motion to dismiss on the basis of qualified immunity, where plaintiff's religious beliefs were substantially burdened and the factual basis for whether defendants' actions were reasonably related to a legitimate penological interest was not yet developed).  At this early stage, there is inadequate information to determine whether defendants were objectively reasonable in their beliefs regarding their proffered penological interests. See Perez v. Westchester Cnty. Dep't of Corr., 05-cv-8120 (RMB), 2007 WL 1288579, at *6 (S.D.N.Y. Apr. 30, 2007).  This determination is more appropriate for summary judgment. See id. at *6 ("It is generally premature to address the defense of qualified immunity in a motion to dismiss pursuant to Rule 12(b)(6)." (alterations and citations omitted)).  Thus, defendants are not entitled to qualified immunity at this stage.

CONCLUSION

For the reasons outlined above, defendants' motion to dismiss is GRANTED in part and DENIED in part. Plaintiff's claims regarding (1) "family events," (2) holy day menus, (3) spiritual advisers, (4) fundraising proceeds, and (5) the reporting of plaintiff's marijuana use are dismissed in their entirety. Because the only claim plaintiff brought against defendant Davis is dismissed, Davis is also dismissed from this suit. Plaintiff's claims regarding (1) the religious calendar, excluding requests for "family events," (2) Friday worship, and (3) plaintiff's turban survive defendants' motion to dismiss.

Counsel for defendants shall provide plaintiff with copies of all unreported decisions cited herein. This Court certifies pursuant to 28 U.S.C. § 1915(a)(3) that any appeal from this order would not be taken in good faith and in forma pauperis status is denied. See Coppedge v. United States, 369 U.S. 438, 444–45 (1962).


SO ORDERED.


P. Kevin Castel
United States District Judge


Dated: New York, New York
       February 24, 2015